## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RAYMOND MOLIERE**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 10-0062**

**BURL CAIN, WARDEN**                              **SECTION "N" (6)**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  Accordingly, it is **HEREBY RECOMMENDED** that the instant petition for federal habeas corpus relief be **DENIED WITH PREJUDICE.**

# I.  PROCEDURAL HISTORY[1]

On August 21, 2003, petitioner, Raymond Moliere, a state prisoner presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana, was indicted by an Orleans Parish Grand Jury on two counts:  Count one - first degree murder of Brandon Davis; count two - armed robbery of James Jones.  On October 12, 2004, the State amended the bill of indictment.  Count one was amended to charge petitioner with second degree murder of Brandon Davis.  Count two was amended to charge petitioner with attempted second degree murder of James Jones.  On October 13, 2004, a twelve-person jury in Orleans Parish Criminal District Court found petitioner guilty on both amended counts.  On October 20, 2004, the trial court sentenced petitioner.  With regard to count one, petitioner was sentenced to life imprisonment.  With regard to count two, petitioner was sentenced to 50 years imprisonment.  The trial court ordered these sentences to be served without benefit of parole, probation, or suspension of sentence and that they be served concurrently.

Pursuant to his appeal, petitioner challenged only his conviction on count two, the charge of attempted second-degree murder, claiming that the State had improperly amended the charge after the commencement of trial.  On April 5, 2006, the Louisiana Fourth Circuit Court of Appeal found that the record did "not definitively indicate that the amendment occurred *before* the trial began."  *Moliere*, 931 So.2d at 1103 (emphasis

---

[1]A portion of the procedural history is taken from the Louisiana Fourth Circuit Court of Appeal decision, *State v. Moliere*, 931 So.2d 1100 (La. App. 4 Cir. 2006).

original).  As such, the state appellate court found that petitioner's right, under state law, "to prepare for the nature and the cause of accusation against him", had been violated, and the court overturned petitioner's conviction on count two.  *Id.*  On rehearing, however, the State submitted a portion of transcript that was missing from its original brief which demonstrated "the charge against the [petitioner] was amended before trial".  *State v. Moliere*, 941 So.2d 61, 62 (La. App. 4 Cir. 2006).[2]  Based upon this evidence, the Louisiana Fourth Circuit, on September 15, 2006, granted rehearing and affirmed petitioner's conviction on the charge of attempted second degree murder.  *Id.*  On May 18, 2007, the Louisiana Supreme Court denied petitioner's writ application, *State v. Moliere*, 957 So.2d 151 (La. 2007), and, on August 31, 2007, denied his motion for reconsideration.  *State v. Moliere*, 962 So.2d 423 (La. 2007).

On November 10, 2008, petitioner filed with the state district court an application for post-conviction relief.[3]  Petitioner's effort in this regard culminated on December 18, 2009, when the Louisiana Supreme Court denied his writ application.  *State ex rel. Moliere v. State*, 23 So.3d 938 (La. 2009).

----

[2]The pertinent transcript of the October 12, 2004 Amendment of Bill of Indictment is contained in the State rec., vol. 4 of 11.  This court has directed the clerk of court to send a copy of this transcript to petitioner in light of his assertion, as set forth in his supporting memorandum (rec. doc. 3, p. 5), that he never received a copy of the transcript reflecting that his bill of indictment was amended prior to the commencement of trial.

[3]A copy of petitioner's post-conviction application is contained in the State rec., vol. 11 of 11.

On December 28, 2009, petitioner filed the instant action for federal habeas corpus relief,[4] raising the following claims:  1) He was denied a fair trial and due process when the State amended count one of his indictment after trial had commenced and counsel was ineffective for failing to object to such an amendment; 2) trial counsel was ineffective due to his failure to subject the State's case to meaningful adversarial testing, the result of which was a finding of guilt on the charges of second degree murder and attempted second degree murder rather than a finding of guilt on the lesser charges of manslaughter and attempted manslaughter; 3) he was denied his right to a complete and fair judicial review of his conviction for second degree murder; 4) appellate counsel was ineffective for failing to challenge his second degree murder conviction on direct appeal;  5) he was denied a fair trial when prosecutors impermissibly used their peremptory challenges to exclude black members from the jury and trial counsel was ineffective for failing to object; 6) the trial judge made erroneous and misleading comments to the jury regarding the responsive verdicts applicable to his case; and, 7) the prosecutor improperly vouched for the credibility of the state

---

[4]*See* Federal rec., doc. 3.  This December 28, 2009 filing date was ascertained via the court's use of the "mailbox rule."  Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he or she delivered it to prison officials for mailing.  *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned habeas corpus application over to prison officials for delivery to this court on the date application was signed); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date petition was signed).

witnesses in closing arguments.  The State, in its response, concedes, and a review of the

record confirms, that the instant action is timely and that petitioner has exhausted his state

court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d

379 (1982).  Accordingly, this court shall review the pertinent facts and applicable standard

of review, then proceed to address the merits of petitioner's claims.

## II.  FACTS[5]

This case concerns the conviction of Raymond Moliere for the second degree

murder of Brandon Davis and the attempted second degree murder of James Jones.  Early in

the morning of June 26, 2003, Davis and Jones were leaving a nightclub called The

Showcase, in New Orleans East.  Felicia Hughes, who worked at The Showcase and who

knew both Davis and Jones, asked them to give her a ride to Chalmette, Louisiana, where she

was staying at the time. They agreed to give her a ride.

On the way to the car, Raymond Moliere also asked Davis and Jones for a ride

to a residence on Skyview Drive in New Orleans East.  Once again, Davis and Jones agreed.

Davis and Jones knew Moliere, and a month before Davis and Moliere had been in an

altercation.  Hughes also knew Moliere.  They had previously been involved in a sexual

relationship, but Hughes had broken it off when she suspected Moliere of stealing from her.

---

[5]The facts are taken from the Louisiana Fourth Circuit Court of Appeal decision, *State v. Moliere*, 931 So. 2d 1100 (La. App. 4 Cir. 2006).

Once they arrived in front of Moliere's destination on Skyview Drive, Davis asked Moliere to get out of the car so he could take Hughes home.  Moliere pulled out a gun and began shooting.  Jones testified that he was shot in the neck, and then he hopped out of the car and attempted to run to the corner.  Moliere continued shooting, and a bullet landed in Jones' left leg.  Moliere then stood over Jones and fired another shot that hit Jones in the arm.  Jones testified that he observed Davis lying across from him near the curb.  Hughes testified that she exited the car and ran down the street, and that Moliere chased her, but eventually he turned around and got back in the car.

Based on interviews with Jones while he was in the hospital, police identified Moliere and issued a warrant for his arrest.   Moliere was eventually arrested on June 28, 2003, after an officer from the Seventh District observed him in the vicinity of Esplanade and North Robertson.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).

6

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### A.  COUNT ONE AMENDED AFTER TRIAL COMMENCED

Petitioner contends he was denied a fair trial when count one of his indictment was amended after trial had commenced.[6]  This claim, however, is without merit because it is based on a factually incorrect premise.  The transcript of the October 12, 2004 amendment of the bill of indictment, a copy of which is contained in the State rec., vol. 4 of 12, reflects that the prosecution amended both counts of the indictment before the jury panel was brought into the courtroom and trial commenced.  The transcript further reflects that petitioner was fully informed of the amendment.  Specifically, a review of the transcript reflects the following colloquy:

> THE COURT:
>
> Mr. Moliere, as you have heard me state it, the State is going to reduce this charge . . . . [T]hey will indeed reduce this case to second-degree murder as to the count that originally charged first-degree murder . . . .
>
> As to Count 1, it is reduced to second-degree murder of Brandon Davis on the 26th of June, 2003.  The gentleman's plea is not guilty.
>
> MR. LARRE [defense counsel]:
>
> That's correct.

---

[6]Petitioner also claims that counsel was ineffective due to his failure to object to the late amendment.  This ancillary ineffectiveness claim will be addressed in a later section of this Report and Recommendation, when the court addresses petitioner's other ineffectiveness claims.

THE COURT:

Your right to a trial by judge or jury as to both Count 1 and to Count 2 remains the same.  Do you wish your trial at no cost to you to be held by judge or jury, sir?

MR. LARRE:

Jury.

THE COURT:

Is that your pleasure, Mr. Moliere, jury?

DEFENDANT RAYMOND MOLIERE:

Yes, sir, jury . . . .

THE COURT:

By jury the gentleman says.  We'll have a panel of 12 Jurors . . . arriving in the room.  They will be convening for 8:30.  I would imagine they will be here for about 8:45 . . . .[7]

Thus, there was clearly no due process violation since the indictment was amended to charge petitioner with second degree murder rather than first degree murder prior to the commencement of trial.  Accordingly, the instant claim for federal habeas corpus relief is without merit.

---

[7]State rec., vol. 4 of 11, transcript of October 12, 2004 Amendment of Bill of Indictment, pp. 3-4.

## B.  INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

Petitioner claims that trial counsel was ineffective in the following respects: 1) He failed to object to the late amendment to count one; 2) he failed to subject the State's case to meaningful adversarial testing, resulting in a finding that petitioner was guilty of second degree murder and attempted second degree murder rather than guilty of the lesser charges of manslaughter and attempted manslaughter; and, 3) he failed to object to the prosecution's unconstitutional exclusion of blacks from the jury venire.  Petitioner claims that appellate counsel was ineffective because she failed to challenge his second degree murder conviction on appeal.

To prove ineffectiveness on the part of trial and/or appellate counsel, a petitioner must satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984).  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted*)* ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").  Under *Strickland*, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

### 1.  Failure to Object to Late Amendment to Indictment

With regard to his claim that trial counsel was ineffective due to his failure to object to the late amendment to count one of the indictment, petitioner has clearly failed to satisfy the above-described burden of proof.  Counsel could not raise an objection because the amendment was not late, the charge having been amended prior to the commencement of trial.  Further, petitioner was not prejudiced by such an amendment as it had the effect of subjecting him to the lesser charge of second degree murder rather than first degree murder.  Thus, petitioner has failed to satisfy his burden of proof under *Strickland*.

### 2.  Failure to Subject the State's Case to Meaningful Adversarial Testing

Petitioner claims that counsel was ineffective due to his failure to subject the State's case to meaningful adversarial testing.  Specifically, petitioner asserts that counsel failed to aggressively cross-examine witnesses Felicia Hughes and James Jones.  Had counsel

11

aggressively cross-examined these witnesses, thereby actively pursuing a "manslaughter defense", petitioner contends the following would have been shown:  1) That Hughes admitted to Moliere that she had had sex with both Jones and Davis; 2) that Davis and Jones intervened in an argument Moliere was having with Hughes and threatened to harm Moliere; and, 3) that Davis, outweighing Moliere by more than 200 pounds, physically grabbed Moliere and told Jones to stop the car so he "could beat him down", while Hughes encouraged Davis to "do it".  (Rec. doc. 3, p. 12).

A review of the trial transcript reveals that defense counsel, contrary to petitioner's suggestion, did aggressively cross-examine witnesses Hughes and Jones in an attempt to show that Jones, Davis and Hughes felt animosity toward Moliere and Moliere pulled a gun and fired at them because he feared for his life.  Specifically, defense counsel asked, on more than one occasion, about whether there was a sexual relationship between Hughes and Jones and/or Davis and whether there was any animosity between Moliere and Jones and Davis.  Again and again, both Hughes and Jones answered in the negative to counsel's questions.[8]  Petitioner offers no suggestion as to what type of cross-examination defense counsel could have engaged in to get Hughes and Jones to admit to the unsupported allegations set forth by petitioner which would have supported a finding of manslaughter rather than second degree murder.  As such, the court finds no deficiency on counsel's part

---

[8]*See* State rec., vol. 8 of 11, pp. 475-476, 482, and 506-513.

and, as such, petitioner has failed to satisfy the first prong of the *Strickland* test.

### 3. Prosecutors Impermissibly Used Peremptory Challenges to Exclude Blacks from Jury Pool and Trial Counsel Failed to Object[9]

Petitioner argues that the prosecution impermissibly used peremptory challenges to exclude African-Americans from the jury venire in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that trial counsel was ineffective for failing to object to the prosecution's misuse of its peremptory challenges. Petitioner also claims that the prosecution received more peremptory challenges than it was entitled to receive by virtue of the fact that the trial court improperly granted one of the State's challenges for cause.

In *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719, the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. In evaluating whether a petitioner has established a *Batson* violation, a three-step analysis is employed, with the first step requiring a petitioner to make a prima facie showing that a peremptory challenge has been exercised on the basis of race. *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

In the instant matter, petitioner provides no evidence to support his bald,

---

[9]Petitioner's ineffectiveness claim based on counsel's failure to object is inextricably intertwined with his substantive claim that the prosecution impermissibly excluded blacks from the jury pool. Accordingly, said claims will be considered together.

unsupported allegation that the State misused its peremptory strikes.  In anticipation of this problem, petitioner complains that he was not provided with a copy of the voir dire transcript and, as such, cannot submit supporting evidence.  However, the voir dire transcript would not provide any evidence regarding the race of the potential jurors.  Further, petitioner was in court at the time the jury was chosen.  His presence should enable him to provide information regarding the racial composition of his jury, how many black venire members were peremptorily challenged by the State, and the basis of challenges granted for cause. Petitioner, however, has failed to provide even this bare minimum of evidence in support of his claim.  Accordingly, petitioner has clearly failed to satisfy his burden of proof under *Strickland. See Bell v. Director, TDCJ-CID,* 2005 WL 2977771, 6 (E.D.Tex. Nov. 02, 2005) (citations omitted) (Petitioner's claim that a juror was improperly struck "is a conclusory allegation . . . insufficient to support a petition for a writ of habeas corpus."); *Eastridge v. U.S.,* 372 F.Supp.2d 26, 61 (D.D.C. May 26, 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire.").

### 4.  Denial of Right to Complete and Fair Judicial Review Due to Counsel's Failure to Challenge Second Degree Murder Conviction on Appeal

Petitioner argues that he was denied his right to complete and fair direct appellate review and that appellate counsel was ineffective by virtue of the fact that no challenge to his second degree murder conviction was raised on direct review.  According

14

to petitioner, his second degree murder conviction was susceptible to challenge on the following grounds: 1) The bill of indictment was improperly amended to charge him with second degree murder after trial had commenced; 2) the evidence supported only a conviction on the lesser charge of manslaughter rather than second degree murder; and, 3) potential black jurors were impermissibly challenged and the State received one too many peremptory challenges.  Petitioner further claims that appellate counsel was ineffective because she submitted nothing more than an "error patent review brief".

A review of the pertinent appellate brief reflects that it was not merely an "error patent review brief."[10]  On the contrary, appellate counsel presented a five-page argument that went beyond a mere inspection of the indictment and transcripts, attacking the State's allegedly untimely amending of the bill of indictment and supporting her argument with statutory and case law.  Further, appellate counsel attacked the amendment on multiple fronts, including the impropriety of amending the original charge of armed robbery to the non-responsive charge of attempted second degree murder.

Additionally, for reasons previously discussed, the grounds which petitioner presents as representing viable challenges to his second degree murder conviction are without merit.[11]  As such, he was not prejudiced by the fact that these grounds were not presented for

[10]A copy of the appellate brief filed on petitioner's behalf is contained in the State rec., vol. 8 of 11.

[11]*See* discussion *supra* at pp.  11-14.

15

review on direct appeal and, as such, he has failed to satisfy his burden of proof under *Strickland*.

### C. TRIAL COURT'S MISLEADING COMMENTS REGARDING APPLICABLE RESPONSIVE VERDICTS

Petitioner argues that the trial court unconstitutionally misled the jury regarding the responsive verdict of manslaughter by mistakenly advising that petitioner had the burden of proving "sudden passion and heat of blood".  However, as shown below, the trial court's remark in this regard was not erroneous.

Under La. R.S. 14:31, the crime of manslaughter is defined, in pertinent part, as:  "A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection."  Under Louisiana law, "'[s]udden passion' and 'heat of blood' are not separate elements of the offense but are mitigating factors, **which the defendant must establish** by a preponderance of evidence." *State v. Points*, 787 So.2d 396, 401 (La. App. 4 Cir. 2001), *citing State v. McClain*, 685 So.2d 590 (La. App. 4 Cir. 1996) (emphasis added).

Thus, contrary to petitioner's claim, the trial court did not mislead jurors regarding the responsive verdict of manslaughter.  As such, petitioner's claim for federal

habeas corpus relief is without merit.

### D.  PROSECUTOR IMPROPERLY VOUCHED FOR CREDIBILITY OF WITNESSES DURING CLOSING ARGUMENT

Petitioner claims that the prosecutor improperly vouched for the credibility of witnesses Hughes and Jones during her closing argument.  Specifically, petitioner provides that the prosecutor stated "that [s]he would not have put Hughes and Jones on the stand if [s]he felt they were not credible".  Further, the prosecutor pointed out, with respect to Hughes and Jones, that "when they couldn't answer the question, they said, 'I don't recall or I don't remember."  Petitioner further provides that the prosecutor informed jurors during closing argument that "she had not offered either witness a deal for their testimony."  (Rec. doc. 1, p. 29).[12]

It is true that it is improper for a prosecutor to vouch for a witness' credibility where there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the witness or on facts not in evidence.  *See, e.g., United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998), *cert. denied*, 525 U.S. 1112, 119 S.Ct. 887, 142 L.Ed.2d 786 (1999)  However, such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather

---

[12]Petitioner asserts that the prosecutor's representation that she did not offer Hughes or Jones a deal from their testimony was false.  According to petitioner, after he was convicted, "charges pending against both witnesses were quickly dismissed, in exchange for their testimony." (Rec. doc. 3, p. 29).  Petitioner, however, provides no evidence to support this allegation.

17

than on personal knowledge of facts outside the record.  *See, e.g., Nicolos v. Scott*, 69 F.3d 1255, 1282-1283 (5th Cir. 1995), *cert. denied*, 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *State v. Sawyer*, 350 So.2d 611, 614 (La. 1977).

In the instant matter, the gist of the comments on the part of the prosecutor were that Hughes and Jones had no reason to lie.  There was no implication that the prosecutor's comments were based on additional personal knowledge about the witnesses or on facts not in evidence.  As such, the court finds that the comments do not cross an impermissible line.  Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Raymond Moliere, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[13]

New Orleans, Louisiana, this __10th__ day of _____December_____, 2010.

LOUIS MOORE, JR.

United States Magistrate Judge

---

[13]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

19